# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**GEORGINA MONGE,**

    **Plaintiff,**

vs.                                                                      Civ. No. 02-0060 JP/LCS

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY**

    **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court upon the Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision filed July 8, 2002 *(Doc. 10)*. Defendant filed a Response on August 7, 2002 *(Doc. 12)*. Plaintiff filed her Reply on August 22, 2002 *(Doc. 13)*. The Commissioner of Social Security issued a final decision denying Plaintiff's application for supplemental security income. The United States Magistrate Judge, having considered the Motion, the Response, the Reply, the memoranda, the administrate record, and the applicable law, finds that Plaintiff's Motion is not well-taken and should be DENIED.

## PROPOSED FINDINGS

1.      Plaintiff, a thirty-four year old woman with a ninth-grade education, filed an application for Supplemental Security Income on May 30, 2000. (R. 13). Plaintiff alleges that she became disabled on March 31, 1999 due to a combination of physical and mental impairments. (R.

13).

2. Plaintiff's application for supplemental security income was denied at the initial level on August 8, 2000. (R. 46-48), and at the reconsideration level on November 2, 2000 (R.at 51). Plaintiff appealed the denial of her application by filing a Request for Hearing by Administrative Law Judge on November 6, 2000. (R. 54-55). A hearing was held before the ALJ on June 13, 2001. (R. 22). Plaintiff appeared and was represented by counsel. *Id*.

3. The ALJ issued his decision on July 25, 2001, analyzing Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 416.920. (R. 10, 14). At the first step of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the filing of her application. *Id.* At the second step, the ALJ found that Plaintiff has a combination of impairments that are "severe" pursuant to 20 C.F.R. § 416.921. (R. 14). At the third step of the analysis, the ALJ found that Plaintiff's combination of impairments was not severe enough to meet or medically equal one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. (R. 14). The ALJ then found that Plaintiff had the residual functional capacity for the performance of routine work activities at the unskilled level, with no discernable physical limitations. (R. 15-16). Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 17).

4. Plaintiff filed a request for review of the ALJ's decision (R. 8) and provided additional evidence to the Appeals Council. (R. 262-267). On December 18, 2001, after considering the additional evidence, the Appeals Counsel denied the request for review. (R. 5-6). Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. On January 18, 2002, Plaintiff filed this action, seeking judicial review of the

Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

5. This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 28 L. Ed. 2d 842, 91 S. Ct. 1420 (1971) (further quotation omitted)). The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the Commissioner." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). A decision by an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

6. In order to qualify for supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months which prevents the claimant from engaging in substantial gainful activity. *See Andrade v. Secretary of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1995)(citing 42 U.S.C. §§ 1382c (a)(3)(A)). At the first four levels of the sequential evaluation process, the claimant must show that she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she has done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity

3

considering her residual functional capacity, age, education, and prior work experience. *Id*.

## ADMINISTRATIVE RECORD

7.  Plaintiff has been treated for asthma for several years with prescribed inhalers. (R. 15). Plaintiff has also had other physical problems which the ALJ characterized as transitory. *Id*. Plaintiff has been treated in the past for gastroesphogeal reflux disease and peptic ulcer disease. (R. 132). An esophagogastroduodenoscopy performed had a normal result, although some erosions were seen in the pylorus. (R.133-135, 165-166). Plaintiff additionally was treated for a deviated nasal septum on January 8, 1999. (R. 155).The ALJ found that these conditions, even considered in combination, caused no significant exertional restrictions that can be related for her physical condition. (R. 15). Plaintiff testified that asthma was her main physical problem. (R. 34). Plaintiff explained that her asthma caused her chest to hurt, to feel tight, and to feel like she is unable to breathe. (*Id*). Plaintiff stated that the asthma limited her in walking, but caused her no other limitation. (*Id*). Plaintiff is treated with albuterol for her asthma.[1] (R. 69). In a questionnaire completed by Plaintiff for the New Mexico Disability Determination Service (hereafter "DDS") on June 28, 2000, Plaintiff stated that she may have an asthma attack twice a week, or up to one a day. (R. 80). Plaintiff stated that she has not been hospitalized or taken to the emergency room for an attack within the past twelve months, and did not list any adjustments to her daily activities because of asthma. (R. 80). Plaintiff stated that her asthma attacks usually last five to ten minutes, and that she is able to get back to her usual activities thirty minutes later. (R. 80).Plaintiff uses her albuterol inhaler as needed for asthma attacks. (R. 81). There is no record of exacerbation of Plaintiff's asthma. (R. 80, 202).

8.  The Plaintiff claims that the ALJ failed to adequately develop the record. The burden to prove disability in a social security case is on the claimant. *Hawkins v. Chater*, 113 F.3d

---

[1] Albuterol (albuterol sulfate) for inhalation may be used for the prevention and relief of bronchospasm in patients with reversible obstructive airway disease, and for the prevention of exercise-induced bronchospasm. 2001 WL 1795454 (PDR)(2002).

1162, 1164 (10th Cir. 1997). However, because a social security disability hearing is a nonadversarial proceeding, the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-361 (10th Cir. 1993). As such, "an ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). The degree of effort required by the ALJ to develop the record varies from case to case. Cf. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (noting that whether ALJ has adequately developed record must be determined on case by case basis); *Lashley v. Secretary of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983).

9. Plaintiff was referred to Carlos Balacazar, M.D., for a psychiatric consultive examination on August 1, 2000. (R. 1811). In his report, Dr. Balcazar noted that Plaintiff's attention span was good and her capacity to concentrate had some degree of impairment, as did remote and recent memory. (R. 182). Dr. Balcazar opined that Plaintiff's intelligence is in the low average or in the upper borderline level. (*Id*). Dr. Balcazar found that Plaintiff was markedly limited in her ability to understand and remember detailed or complex instructions; moderately limited in her social interactions with the public and coworkers; and mildly limited in her social interactions with supervisors, in her ability to adapt and change in the workplace, in her ability to use public transportation or travel or unfamiliar places, in understanding and remembering very short and simple instructions, and in her ability to carry out instructions, concentrate, and work without supervision. (R. 184-185).

10. Plaintiff, however, argues that Dr. Balcazar's opinion that Plaintiff's intelligence is in the low average or in the upper borderline level ( R. 182) required the ALJ to order further examinations and develop the record as to Plaintiff's intelligence.

11. Ordinarily, the claimant must in some fashion raise the issue sought to be

5

developed, which, on its face, must be substantial. *Hawkins v. Chater*, 113 F.3d at 1166 (internal citations omitted). The claimant "has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative exam. *Hawkins v. Chater*, 113 F.3d at 1166-67. The ALJ is not required to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. *Hawkins*, 113 F.3d at 1168 (citing generally, *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994)). The applicable standard is that "of reasonable good judgment. The duty to develop the record is limited to 'fully and fairly developing the record as to material issues.'" *Hawkins*, 113 F.3d at 1168 (citing *Baca v. Department of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993)).

12. The Plaintiff never raised the issue of her intelligence in the application process. (*See, e.g.,* R. 58-60, 49-50, 54-55). Although Plaintiff did not raise the issue of her intelligence, the ALJ obtained and considered extensive medical records of Plaintiff. (*See*, R. 15 (discussing Plaintiff's medical records, counseling records, and the CE)). In addition, although Dr. Balcazar referred to Plaintiff's possibly low-average to borderline intellectual capacity, it does not appear that Dr. Balcazar's opinions or findings were primarily reliant upon this isolated comment, nor is this issue raised anywhere else in Plaintiff's medical and counseling records, application, or testimony. As the ALJ noted, Plaintiff was articulate at the hearing, and had no apparent problems in completing her initial application for benefits herself (*See*, R. 79, 82, 83). Finally, the ALJ met any burden to further develop the record in ordering the CE with Dr. Balcazar. Plaintiff's argument that her case should be remanded for further development of the record is not supported by substantial evidence.

13. Plaintiff is receiving counseling at Valencia Counseling (R. 36). She is currently

on three medications, an albuterol inhaler, Zoloft©,[2] and lorazepam.[3] (R. 35-36). Plaintiff testified that she cooks, and does some cleaning. (R. 39-40). Plaintiff has three children at home, ages six, nine, and thirteen. (R. 42). She is responsible for their care when they are at home. *Id*. Plaintiff has her driver's license, and is able to drive herself to her doctors appointments. *Id*. Plaintiff has a counseling appointment every month and sees Dr. Baca every two months. *Id*. Her counseling appointments are an hour in duration; her appointments with Dr. Baca are five or ten minutes. (R. 43). Plaintiff can take care of her own basic needs (R. 90). She is able to wash, take care of her bed and sweep. (R. 83). She does her own shopping, prepares meals, and handles her own bills. (R. 83, 181). Plaintiff has noted that she has no problems getting along with family, friends, or neighbors. (R. 83).Her condition, including her physical and mental limitations, has not changed since she filed her claim. (R. 88).

  14. The Plaintiff argues that the ALJ erred in his residual functional capacity assessment and in application of the GRID regulations. Plaintiff also contends that she should be found to meet the listings of impairments under §§ 12.04 Affective Disorder-Depressive and 12.06 Anxiety Related Disorder. (R. 98). Plaintiff argues that she is primarily limited as a result of her severe psychiatric condition. (R. 99). Plaintiff notes that Dr. Baca, Plaintiff's treating physician, noted on a questionnaire that Plaintiff's activities of daily living are affected moderately, as are Plaintiff's concentration, persistence and pace; that Plaintiff's social functioning is markedly affected, and that Plaintiff has had four or more instances of deterioration or decompensation at work. (R. 99).

---

  [2] Zoloft© (sertraline hydrochloride) is indicated for the treatment of major depressive disorder, obsessions and compulsions in patients with obsessive-compulsive disorder (OCD), panic disorder (with or without agoraphobia), and posttraumatic stress disorder. 2001 WL 1920364 (PDR)(2002).

  [3] Lorazepam is indicated for the management of anxiety disorders or for the short-term relief of the symptoms of anxiety or anxiety associated with depressive symptoms. 2001 WL 742749 (PDR)(2002).

Plaintiff additionally claims that the ALJ erred in his evaluation under the Listing of Impairments and in discounting the opinion of her treating physician.

**Discounting the Opinion of Claimant's Treating Physician**

15. The ALJ "must give 'controlling weight' to the treating physician's opinion, provided that opinion 'is well-supported . . . and is not inconsistent with other substantial evidence.'" *White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2002). *See also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing 20 C.F.R. §§ 416.927(d)(2)); 20 C.F.R. §§ 404.1527(d)(2)). A therapist's opinion is also acceptable as a medical source opinion. *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

16. The ALJ set forth specific reasons for discrediting Dr. Baca's opinion that the Plaintiff is unable to work. The ALJ noted that Dr. Baca only sees the Plaintiff every two months. (R. 15). He noted that the Plaintiff has stated that she cares for her personal needs, and that Dr. Baca's contention is also inconsistent with the questionnaire completed by DDS, who opined that Plaintiff had only a slight degree of limitation in her activities of daily living, and had slight difficulty in maintaining social functioning, often had deficiencies of concentration, persistence or pace, and had episodes of deterioration or decompensation in work or work-like setting once or twice. (R. 15, 38-43, 90, 194). In addition, Dr. Baca's notes indicate that his treatment of Plaintiff dealt primarily with adjusting her medication. (*See* R. 220, 225, 226, 228-230, 232, 257). Of eleven recorded appointments with Dr. Baca, Plaintiff missed three. (R. 222, 231, 227, 233). In addition, there was a period of six months where Plaintiff did not see Dr. Baca. (R. 230). Dr. Baca's assessment was thus not well-supported, and is inconsistent with other substantial evidence. As such, the ALJ did not err in choosing to discount Dr. Baca's opinion that Plaintiff is unable to work.

**Evaluation Under the Listing of Impairments**

17. The ALJ correctly noted that "[a] medically determinable impairment or

combination of impairments is 'severe' if it limits an individual's physical or mental ability to do basic work activities." (R. at 14)(citing 20 C.F.R. § 416.921). Although the ALJ found that the Plaintiff's "asthma imposes very little in the way of functional limitations," the ALJ nevertheless considered Plaintiff's asthma as a "severe" impairment in making his decision (R. at 14). The ALJ noted that the Plaintiff is in counseling for panic disorder with agorophobia [*sic*] and depression, and [that Plaintiff] has alternately been diagnosed with dysthemia [*sic*] and an atypical personality disorder." (R. at 14). The ALJ found that these conditions constitute "severe" impairments as well. (R. 14).

18. Pursuant to the Listing of Impairments, in order to meet the listing for Section 12.04 Affective Disorders, the claimant must show both medically documented persistence of depressive syndrome[4] or manic syndrome[5] or bipolar syndrome,[6] and must result in two of the following: marked restriction of the activities of daily living; or marked difficulty maintaining social functioning or marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (A)-(B). Alternatively, the claimant may demonstrate medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a

---

[4] Depressive syndrome is characterized by at least four of the following: anhedonia or pervasive loss of interest in almost all activities; or appetite disturbance with change in weight; or sleep disturbance; or psychomotor agitation or retardation; or decreased energy; or feelings of guilt or worthlessness; or difficulty concentrating or thinking; or thoughts of suicide; or hallucinations, or paranoid thinking. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 A(1)(a)-(i).

[5] Manic syndrome is characterized by at least three of the following: hyperactivity; or pressure of speech; or flight of ideas; or inflated self-esteem; or decreased need for sleep; or easy distractability; or involvement in activities that have a high probability of painful consequences which are not recognized; or hallucinations or paranoid thinking. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (A)(2)(a)-(h).

[6] Bipolar syndrome is characterized with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes). 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (A)(3).

9

minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support and one of the following: repeated episodes of decompensation, each of extended duration; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate; or current history of one or more years' inability to function outside a highly supportive living arrangement, and a continued need for such arrangement. *Id.* In order the meet the listing for Section 12.06 Anxiety Related Disorders, the claimant must show medically documented finding of one of the following: generalized persistent anxiety[7]; persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity or situation; or recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring at least once a week; recurrent obsessions or compulsions which are a source of marked distress; or recurrent and intrusive recollections of a traumatic experience which are a source of marked distress.[8] 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.06.

19. The ALJ specifically evaluated Plaintiff's mental health conditions singularly and in combination, in applying the Listing of Impairment, but found no marked or extreme functional limitations in any of the broad functional categories. (R.15). The ALJ considered all of Plaintiff's symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, pursuant to 20 C.F.R. § 416.927 and

---

[7] Generalized persistent anxiety must be accompanied by three of the four following signs or symptoms: motor tension, autonomic hyperactivity, apprehensive expectation, or vigilance and scanning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.06 (A)(1)(a)-(d).

[8] The recurrent intrusive recollections must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04

Social Security Rulings 96-2p and 96-6p. (R. 15). In considering Plaintiff's mental health conditions, the ALJ noted that Plaintiff sought treatment at Valencia Counseling Service in 1999; Plaintiff had not been in previous specific mental health treatment. (R.15). The ALJ noted that Dr. Baca had assessed Plaintiff with panic disorder with agoraphobia, with secondary depression, and that Dr. Baca had characterized Plaintiff as stable on medication in June 2000. (R.15). The ALJ found that Plaintiff's mental status is generally stable, that she attends counseling only once a month, and only sees Dr. Baca briefly every other month. *Id*. Plaintiff testified that her visits with Dr. Baca deal with adjusting her medication, and such visits are five or ten minutes in duration. (R. 38, 43). The ALJ noted that Plaintiff is the primary care provider for her three children, that she cares for her own personal needs, does housekeeping and cooking, and pays her own bills. (R.15). The ALJ did not accept Plaintiff's testimony that she seldom cooks and cannot perform household tasks given that she has three young children in her singular care. *Id.* In a Daily Activities Questionnaire completed by Plaintiff, Plaintiff stated that she cooks, cleans, and washes on a typical day. (R. 83). Plaintiff has additionally stated that she is able to care for her basic needs. (R.90). The ALJ further noted that Plaintiff had declined the need for daily living intervention at Valencia. *Id*. The ALJ thus found that these facts did not demonstrate marked restriction of the activities of daily living, as set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (A)-(B).

20. Plaintiff testified that she would forget to do things while employed as a maid at a hotel and as a janitor at the airport. (R. 31-32). Plaintiff testified that she got upset and felt like she wanted to run and cry when told that she forgot to do things while employed as a janitor. (R. 32). Plaintiff testified that she was slow when employed as a packer. (R.34). Plaintiff also testified that she left her job as a packer "because it was too far for me." (R. 34). The information provided in Plaintiff's testimony, medical records, and application do not indicate that she has had "repeated episodes of deterioration or decompensation in work or work like settings which [would cause Plaintiff] to withdraw from the situation or to exacerbate signs and symptoms." *See*

*generally,* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00(C)(4); 12.04(B)(4); 12.06 (B)(4). In her application for benefits, Plaintiff stated that she has no problems getting along with family friends or neighbors, and gets along well with people in authority. (R. 77). In her application, Plaintiff further stated that when she worked in the past, she was able to keep up with her work and was able to concentrate on her work for extended periods of time. (R.79). Plaintiff has stated that she is able to deal with changes at work. (R. 79, 86). The ALJ found that these facts did not demonstrate marked difficulty maintaining social functioning, and nor was there evidence of any episodes of decompensation of sufficient severity to meet the requirements of the Listing of Impairments. *See generally*, 20 C.F.R. Part. 404, Subpt. P, App. 1, §§ 12.00 (C)(4); 12.04 (B)(4); 12.04 (C)(1).

21. The ALJ noted that The ALJ thus carefully considered Plaintiff's various records and testimony; these factors support the ALJ's finding that Plaintiff has failed to demonstrate the presence of any listings-level impairment. (R. 15).

**Evaluation of Residual Functional Capacity**

22. The Plaintiff argues that the ALJ erred in his residual functional capacity assessment. Having found that Plaintiff had failed to demonstrate the presence of a listings-level mental impairment, the ALJ thereafter made his assessment as to whether Plaintiff retained the residual functional capacity to perform the requirements of her past relevant work or other work existing in significant numbers in the national economy. (R. 15)(citing 20 C.F.R. § 416.929 and Social Security Ruling 96-8p). The ALJ correctly noted that in making this assessment, he was required to consider all symptoms, including pain, and the extent to which such symptoms could be reasonably accepted as consistent with the objective medical evidence and other evidence provided.. (R. 15).

The ALJ found that Plaintiff's asthma only marginally constituted a "severe" impairment, noting that Plaintiff's medical records and testimony corroborated that although asthma was

Plaintiff's main physical problem, there has been no record of any exacerbations, required emergency room visits, or hospitalizations for Plaintiff's asthma. (R. 15; *see*, R. 34, 69, 80, 202). The ALJ also considered Plaintiff other transitory medical problems, and found no significant exertional restrictions related to her physical condition. (R. 15; 133-135, 165-166, 155).

23. In making his determination of Plaintiff's residual functional capacity, the ALJ considered the medical and non-medical evidence of Plaintiff's physical and psychiatric impairments to determine the total limiting of such impairments consistent with 20 C.F.R. § 416.929. The ALJ's determination of Plaintiff's residual functional capacity is supported by substantial evidence, and should not be disturbed.

**Impact of Plaintiff's Impairments on Ability to Perform Basic Work Functions**

24. Plaintiff also claims that the ALJ failed to perform the requisite analysis to determine the impact of Plaintiff's psychiatric impairments on her ability to perform basic work functions. However, as noted above, the ALJ considered Plaintiff's mental health conditions singularly and in combination, but found no marked or extreme functional limitations in any of the broad functional categories. (R15). The ALJ found that Plaintiff's mental status is generally stable. *Id*. The ALJ considered the evidence provided regarding Plaintiff's ability to get along with others and with those in authority and to deal with changes in a work setting. (R. 77, 79). In addition, Plaintiff has stated that when she worked in the past, she was able to keep up with her work and was able to concentrate on her work for extended periods of time. (R.79). The ALJ also considered and evaluated the information provided by Dr. Baca and Dr. Balcazar regarding Plaintiff's ability to work. (R. 15-17). The ALJ thus performed the requisite analysis to determine the impact of Plaintiff's psychiatric impairments on her ability to perform basic work functions.

**Application of the Grids**

25. Plaintiff finally alleges that the ALJ erred in application of the grids in determining that Plaintiff was not disabled. Automatic application of the grids is appropriate only when a

claimant's residual functional capacity, age, work experience, and education precisely match a grid category. *Gossett v. Bowen*, 862 F.2d 802, 806 (10th Cir. 1988)(citing *Heckler v. Campbell*, 461 U.S. at 462 n.5)(further internal citations omitted). In borderline situations, the grids should not be mechanically applied. *See, e.g., Daniels v. Apfel*, 154 F.3d 1129, 1135 (10th Cir. 1998). When nonexertional limitations affect the range of activities that the claimant can participate in, the grids can serve only as a framework to aid in determining whether sufficient jobs exist for a claimant, given his limitations and characteristics. *Gossett v. Bowen*, 862 F.2d at 806.

26. The parties have agreed that Plaintiff has no past relevant work. (R. 17). The ALJ noted that Plaintiff is currently thirty-four years old, a "younger individual" pursuant to 20 C.F.R. § 416.963, with a limited education and no past relevant work. *Id*. The ALJ found no significant exertional restrictions related to Plaintiff's physical condition. *Id*. The ALJ had also found that Plaintiff's nonexertional limitations did not significantly compromise Plaintiff's ability to perform work at all exertional levels. *Id*. Therefore, the ALJ concluded that section 204.00, App. 2, Subpt. P, Regulations No. 4 indicated that a finding of not disabled would be appropriate. Plaintiff argues that any application of the grids is inappropriate. Pl. Memo. at 5. However, "the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids." *Gossett v. Bowen,* 862 F.2d at 807 (citing *Channel v. Heckler*, 747 F.2d 577, 582 n.6 (10th Cir. 1984)). The presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant. *Id.* at 807-08. Plaintiff's reliance upon Social Security Ruling 96-9P is misplaced, as the ALJ specifically found that Plaintiff's psychiatric impairments did not substantially impair Plaintiff's ability to perform basic work-related functions. (*See,* R. 15-17).

27. In making his determination, the ALJ specifically referred to 20 C.F.R. Part 404, Subpt. P, App. 2, § 204.00. (R. 17). Plaintiff argues that this section does not apply to Plaintiff because the ALJ had found that Plaintiff had severe impairments. Pl. Memo. at 14 (citing R. 14).

14

Plaintiff further notes that the parties have agreed that Plaintiff has no past relevant work. (R. 17).

28. Although the ALJ specifically referenced § 204.00, he further stated that "[t]he medical vocational guidelines reflect the existence of approximately 2,500 unskilled occupations that are met by administrative notice. Ms. Monge retains the ability to engage in routine unskilled work activities." (R. 17). Defendant argues that the ALJ may have mistakenly cited § 204.00, while applying §203.00, dealing with maximum sustained work capability limited to medium work as a result of severe medically determinable impairments. *See*, 20. C.F.R. Part 404, Subpt. 9, App. 2, § 203.00. Section 203.00, refers to persons with severe medically determinable impairments, and states that "[a]pproximately 2,500 separate sedentary, light, and medium occupations can be identified, each occupation representing numerous jobs in the national economy which do not require skills or previous experience and which can be performed after a short demonstration or within 30 days." *Id*. It appears that the ALJ was, in fact, applying § 203.00, having made reference to both severe medically determinable impairments, and to 2,500 unskilled jobs which do not require experience. The provisions of Section 20.300 are consistent with the ALJ's findings that Plaintiff had severe impairments, that Plaintiff had no past relevant work, and that "[t]he medical vocational guidelines reflect the existence of approximately 2,500 unskilled occupations that are met by administrative notice." (R. 17). Although the ALJ may have mistakenly referenced the incorrect section of the grids, his application of the guidelines was proper and was supported by substantial evidence. Any misstatement of the specific guideline applied by the ALJ is immaterial, given that the ALJ's careful articulation of his analysis demonstrates that the grids were correctly applied. *See, e.g., Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991)(finding that harmless error by ALJ was not grounds for reversal, where ALJ's decision was supported by substantial evidence).

## RECOMMENDED DISPOSITION

The ALJ applied the correct legal standards, and his determination is supported by substantial evidence. I recommend that Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision filed July 8, 2002 *(Doc. 10)* be **DENIED.** Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**